## Bartholomew v. National Rubber Realty Company (et al., Appellant).

Argued January 17, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Edred J. Pennell,* for appellant.

*Samuel H. High,* with him *John M. Dettra, Aaron S. Swartz, Jr., Samuel H. High, Jr.,* of *High, Dettra & Swartz,* and *Louis M. Childs, 2d,* for appellee.

OPINION BY MR. JUSTICE STERN, March 21, 1938:

This appeal is from the refusal of the court below to open a decree pro confesso. It is the culmination of such extensive litigation that whatever merits may originally have inhered in appellant's case have been largely obscured and impaired by procedural processes.

To the petition to open the decree, filed by appellant, as trustee in bankruptcy of Owners' Mutual Tire Factories, Inc., one of the defendants, plaintiff filed a responsive answer, the averments of which, no depositions having been taken, must be accepted as true. Only the facts immediately relevant to the present phase of the controversy need be stated.

In 1917 defendant National Rubber Realty Company "duly and legally" executed coupon bonds in the sum of

$250,000, payable in 1937, bearing interest at the rate of six per cent per annum, and secured by a mortgage on its factory property in Pottstown. There is no apparent contention that these bonds were not properly issued for value received. In 1930 National Rubber Realty Company conveyed part of the mortgaged premises to the other defendant, Owners' Mutual Tire Factories, Inc. On August 5, 1933, plaintiff, who is the substituted trustee under the mortgage, filed a bill in equity for a decree authorizing foreclosure and sale, it being alleged that no interest had ever been paid on the bonds. Counsel for defendants entered his appearance, but no answer to the bill was filed. In December, 1933, Owners' Mutual Tire Factories, Inc., was adjudicated a bankrupt and receivers were appointed. On May 8, 1934, no further proceedings having taken place in the bankruptcy court, an order for a decree pro confesso was filed by plaintiff, followed on July 14, 1934, by a decree of the court adjudging the principal and accumulated interest to be due and authorizing the sale of the premises on September 5, 1934. On the day before the date of the proposed sale, the bankruptcy court issued an order restraining plaintiff from proceeding. In June, 1935, appellant was appointed trustee in bankruptcy of Owners' Mutual Tire Factories, Inc. Meanwhile plaintiff had petitioned the bankruptcy court to vacate its restraining order. The petition was referred to a master, who held several hearings and made a report to the court, resulting in a provisional order on April 14, 1936, and a final order on July 9, 1936, vacating the restraining order of September 4, 1934, with leave to appellant to intervene in the foreclosure proceedings. The bankruptcy court based this action upon the master's findings that the fair market value of the property was less than the amount due on the mortgage and therefore the bankrupt estate possessed no equity in the real estate. The vacating order was conditioned upon the mortgagee waiving the right to a deficiency judgment, and such a

waiver was duly filed. The court below, in the fore-closure proceedings, entered a supplementary decree fixing July 15, 1936, as the date for the sale of the property, and providing a minimum sale price of $150,000. On July 13, 1936, two days before the time thus appointed, appellant presented a petition that he be substituted as a defendant, that the decree pro confesso be rescinded or opened, and that he be allowed to file an answer to the bill of foreclosure, a copy of the proposed answer being attached to his petition. A rule to show cause was allowed, plaintiff filed an answer to the petition, and the court, after argument, discharged the rule. No stay having been granted, the sale of the property was held on July 15, 1936, as ordered. The property brought $150,000, and on January 29, 1937, after several intervening rules and motions which need not be detailed, this sale was confirmed.

Plaintiff contends that the court's refusal to permit intervention or to open the decree was proper because appellant was guilty of laches. He also argues that such action by the court should not be reversed unless it amounted to an abuse of discretion. Appellant, on the other hand, insists that the decree was entered in violation of an understanding between counsel for plaintiff and counsel for the receivers, and, further, that no notice was given him of the amendment of the decree changing the time and conditions of the sale. He claims that he is entitled to intervene in the foreclosure proceedings under Equity Rule 25. Without discussing these subjects of controversy, we will resolve them, for present purposes, in favor of appellant, and assume that, under the circumstances and history of the proceedings, he had a right to intervene and present any meritorious defense he might have to the bill of foreclosure. Unfortunately for him, however, it does not appear, from the proposed answer attached to his petition, that he has any such defense.

He asserts, first, that mortgage bonds of the par value of $240,000 were pledged by the holders to secure notes aggregating $120,000, and that the interest on these notes was fully paid up until the time of the filing of the bill of foreclosure. Even if this were true, which plaintiff does not fully admit, it would not excuse a nonpayment of the interest on the bonds, since clearly the obligation to pay the coupons is unrelated to, and independent of, the payment of interest by owners of bonds to pledgees thereof on individual loans.

As a second proposed defense, appellant alleges that the coupons on the bonds up to June 1, 1925, were "by agreement of all interested parties fully paid and satisfied . . . on or about June 10, 1925." Plaintiff admits that, although such coupons were not actually paid, they were detached and cancelled; he therefore states his willingness to file a proper remittitur from the amount originally decreed to be due. For a reason hereinafter stated, the fact that the amount of interest actually due is less than that claimed is of no practical moment.

Appellant next asserts that from the time of the execution of the mortgage no coupons were ever presented for payment and no funds deposited with the trustee for the purpose of paying the same, but that "the regular and uniform course of conduct" was for the mortgagor and the bondholders "to make mutual adjustment of such interest and other obligations among themselves and with the approval and acquiescence of all parties to dispense with the strict requirement of the provisions of the mortgage or deed of trust." Apart from the failure to allege specific facts upon which this general averment is based, it does not constitute a legal defense to the nonpayment of the interest.

Finally, appellant argues that even though interest was due on unpaid coupons, the bonds themselves were not payable at the time of the filing of the bill, because, in order for their maturity to be accelerated according

to the terms of the mortgage, there had to be a written declaration by a majority in amount of the holders of the bonds issued and outstanding, declaring the principal to be due and payable, and it does not appear that such declaration was made. This argument overlooks article VI of the mortgage, which provides that if default be made in payment of any interest and continued for a period of sixty days, the trustee may, in its discretion, and shall, upon the written request of the holders of twenty-five per cent in amount of the bonds at that time outstanding (which request was made in the present case), proceed by suit or suits at law or in equity "to enforce payment of the said bonds and to foreclose this mortgage and to sell the property." The phrase "to enforce payment of the said bonds" is to be interpreted as effecting an acceleration: see *Northampton Trust Co., Trustee, v. Northampton Traction Co.,* 270 Pa. 199. Moreover, the same article provides that upon any sale made by the trustee "the whole principal sum of the outstanding bonds secured by this mortgage shall be instantly due and payable."

We come to the controlling objection against granting the relief sought by appellant, namely, that the bankrupt estate of which appellant is trustee cannot derive any advantage from the opening of the decree because it has no equity in the property over and above the amount which even appellant must concede to be due on the mortgage. The sale held under the decree of foreclosure brought only $150,000, and if all the reductions reasonably claimed by him were to be made, the remainder owing would still be greater than the sum thus realized. There is no indication that another sale would bring more, nor, indeed, does appellant anywhere assert that the property has a greater value. Under such circumstances only a fruitless delay, unfair to the bondholders, would result from opening the decree and setting aside the sale. In passing, it may be remarked that there is no merit in appellant's argument that only the amount can

be recovered for which the bonds were pledged as collateral. If originally lawfully issued for full consideration, or if, as alleged by plaintiff and found as a fact by the bankruptcy court, the bonds were sold by the pledgees at public sale to present bona fide owners, the decree in the present foreclosure proceedings was properly for the amount of their par value.

The order of the court below dismissing appellant's rule to show cause why the decree pro confesso should not be rescinded or opened is affirmed; costs to be paid by appellant.